```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Daniel Richard Otero, Sr.**

   **v.**                               Civil No. 14-cv-206-PB
                                      Opinion No. 2015 DNH 161
**Carolyn Colvin,**
**Acting Commissioner,**
**Social Security Administration**


### MEMORANDUM AND ORDER

Daniel Richard Otero, Sr. appeals the Commissioner's denial of his applications for a period of disability and disability insurance benefits. He argues that the Administrative Law Judge (the "ALJ") omitted a material nonexertional limitation from his residual functional capacity ("RFC") finding and impermissibly made alternative findings at both step four and step five of the Social Security Administration's sequential evaluation process. For the reasons I explain below, I deny Otero's request for remand and affirm the decision of the Commissioner.


### I.   BACKGROUND

Pursuant to this Court's Local Rule 9.1, the parties have submitted a statement of stipulated facts (Doc. No. 14). See LR 9.1. Because this statement is part of the Court's record, I

need not recount it here.  Facts relevant to the disposition of this matter are discussed as necessary below.

## II.   STANDARD OF REVIEW

42 U.S.C. § 405(g) authorizes me to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  My review "is limited to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). Findings of fact made by the ALJ are accorded deference as long as they are supported by substantial evidence.  Id.  Substantial evidence to support factual findings exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'"  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  If the substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a different conclusion."  Id. at 770.  Findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts."

Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### III. ANALYSIS

Otero is a 37-year-old man who previously worked as a construction laborer and painter. On March 11, 2010, he filed a claim for disability benefits alleging disability on the basis of both physical and mental conditions, including right elbow tendinitis, bipolar disorder, depression, and anxiety. See Tr. at 410. On September 28, 2012, the ALJ denied his claim.

Otero now seeks remand of his claim for two reasons. First, he argues that the ALJ erred by omitting his alleged "severe limitations in social functioning," Doc. No. 9-1 at 8, from his RFC determination. Second, he argues that the ALJ made reversible legal error by making alternative findings of disability at both step four and step five of the sequential evaluation process. I address each argument in turn.

A. **Residual Functional Capacity**

Before proceeding to step four of the sequential evaluation process, the ALJ found that Otero has the following RFC:

3

> [Otero] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). He is unable to climb ladders, and is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He must avoid temperature extremes, vibrations, and unprotected heights.

Tr. at 328. Thus, the ALJ found that Otero is constrained only by exertional, and not by any nonexertional, limitations. The ALJ then concluded at step four that Otero could return to his previous work with this RFC. Based on a vocational expert's testimony, the ALJ also concluded at step five that Otero could find other work in the national economy with his RFC. Consequently, the ALJ found Otero not disabled and denied his claim accordingly.

Otero contends that, in light of his alleged mental illness, the ALJ's RFC finding should have included an additional nonexertional limitation recognizing that Otero suffers from "severe limitations in social functioning," Doc. No. 9-1 at 8.[1] The ALJ's omission of this material nonexertional limitation, Otero argues, was erroneous for three reasons: (1) because the ALJ improperly discounted certain objective evidence

---

[1] Otero's briefing does not clearly identify the specific nonexertional limitation that he alleges. Construing his pleadings as generously as possible, I understand him to argue that his alleged mental illness causes him to suffer from "severe limitations in social functioning," Doc. No. 9-1 at 8. As my analysis makes clear, however, Otero's challenge against the ALJ's RFC finding would fail regardless of the specific nonexertional limitation Otero claims his asserted mental illness to impose.

in the record that favors his claim; (2) because the ALJ assigned insufficient weight to the opinion of Dr. Almos Nagy, Otero's treating physician; and (3) because the ALJ improperly discredited Otero's own subjective complaints of mental illness symptoms. None of these arguments, however, establishes any error made by the ALJ in reaching his RFC determination.

1. Otero's Treatment Records

Otero argues that "the evidence in the administrative record, at the very least, support[s] a conclusion he had severe limitations in social functioning." Doc. No. 9-1 at 8. Specifically, he points to his behavioral health treatment records from a number of mental health treatment facilities as objective evidence that supports a finding of a nonexertional limitation based on mental illness.[2] These records suggest that

---

[2] Otero also points to the hearing testimony of Dr. Gerald Koocher, a non-treating physician who reviewed Otero's records, as objective evidence that supports his claim. At most, however, Dr. Koocher suggested only that Otero might have difficulty in "managing his anger on the job." Tr. at 382. Otherwise, Dr. Koocher testified that Otero's attention span, concentration, persistence, pace, and ability to follow "even relatively complex instructions" were not impaired; that Otero's ability to manage the activities of daily living were not constrained by mental limitation; and that Otero could "engage in reasonable interpersonal relationships" aside from "temper blow up[s]." Tr. at 381-82. Nothing in Dr. Koocher's testimony, therefore, definitively identifies a particular mental limitation that would restrict Otero's ability to function within a workplace. To the contrary, and considering Dr. Koocher's testimony in its entirety, it was reasonable for the ALJ to construe his testimony as evidence that Otero suffers from no such limitation. See Tr. at 377-88.

5

Otero suffers from chronic mental disorders, including anxiety, depression, borderline personality disorder, and posttraumatic stress disorder.  The ALJ, Otero contends, erred by discounting this objective evidence and instead finding that he has no nonexertional limitations.

Otero's argument, however, misconstrues the standard of review that applies here.  Under that standard, I "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  Here, the ALJ clearly addressed and considered the behavioral health treatment records to which Otero points.  See Tr. at 326-35.  But based on other evidence in the record, the ALJ concluded that Otero has no nonexertional limitation caused by mental illness despite the findings contained in those treatment records.  Tr. at 329.  Substantial evidence in the record amply supports this finding, including:

- In March 2011, one doctor noted that despite Otero's numerous self-reported symptoms, Otero was observed to have normal flow of thought, mood and affect, judgment, and intellect, with only mildly poor insight (Tr. at 989);

- In December 2010, a mental health counselor described Otero as presenting in a "controlled fashion" (Tr. at 977);

6

- At the hearing on July 9, 2012, Dr. Gerald Koocher, a non-treating physician who reviewed Otero's records, opined that Otero's alleged depression "appears to have improved significantly," that his alleged anxiety "is not documented in his treatment records," and that the record did not demonstrate that Otero suffered from a personality disorder (Tr. at 383);

- At the hearing on March 2, 2012, the ALJ noted that Otero presented as "verbal and articulate" and was able to "respond appropriately to questions" (Tr. at 327, 365).

This material demonstrates that substantial evidence in the record supports the ALJ's finding that Otero suffers from no nonexertional limitation caused by mental illness. Thus, I am not free to disturb that finding on appeal. See Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 534-35 (1st Cir. 1988). Even if the behavioral health treatment records to which Otero points conflict with the evidence that supports the ALJ's finding, it falls within the ALJ's province to resolve inconsistencies in the record. See id. at 534 ("Resolution of conflicts in the evidence is for the [Commissioner]."). That is what the ALJ did here by addressing Otero's behavioral health treatment records but finding them contradicted by the rest of the record. See Tr. 329-33. The behavioral health treatment records, therefore, do not establish that the ALJ erred by finding that Otero does not have a nonexertional limitation caused by mental illness.

2.  Weight Assigned to Dr. Nagy

Otero began to seek mental health treatment from Dr. Almos Nagy in March 2011.  Tr. at 1001.  He visited with him nine times between then and the ALJ's September 28, 2012 denial of his claim.  In the mental RFC questionnaire for Otero, Dr. Nagy opined that Otero had numerous mental impairments, including moderate limitations in his ability to remember, understand, and carry out detailed instructions, his ability to interact appropriately with the public, and to maintain socially appropriate behavior.  Tr. at 1039.  Dr. Nagy also co-signed a report that diagnosed Otero with posttraumatic stress disorder and a borderline personality disorder.  Tr. at 1232.  In determining that Otero does not suffer from any nonexertional limitation caused by mental illness, however, the ALJ assigned only "little weight" to Dr. Nagy's opinion.  Tr. at 333.  Otero now contends that the ALJ was required to give more weight to Dr. Nagy's opinion.

Although an ALJ may not ignore evidence or judge matters entrusted to experts, an ALJ can exercise discretion to decide how much weight to extend to evidence in the record.  See Rodriguez Pagan, 819 F.2d at 3.  This discretion extends even to the opinions of treating physicians, which "are not entitled to greater weight merely because they were treating physicians." Id.  This is particularly true when the opinion of the treating

8

physician is merely conclusory.  See Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982) (per curiam).

Here, the ALJ addressed and considered Dr. Nagy's opinion at length.  See Tr. at 332-33.  Based on other evidence in the record, however, he decided to place little weight on Dr. Nagy's opinion and provided a reasoned explanation for this decision.  Tr. at 333.  In particular, the ALJ suspected that, on at least one occasion, Dr. Nagy "simply signed what the claimant filled out."  Tr. at 333.  He also noted that Dr. Koocher, who reviewed Otero's treatment records, opined that nothing in the narratives that Dr. Nagy recorded in those records supported his findings that Otero suffered from multiple limitations related to mental health.  Tr. at 332.  Dr. Koocher also explained at length how Dr. Nagy's records throughout his treatment of Otero contradicted each other and reached inconsistent and unsupported findings regarding Otero's mental health.  See Tr. at 378-82.  In short, the ALJ addressed and considered Dr. Nagy's opinion but found that it was entitled to only little weight given the rest of the evidence in the record.  In doing so, the ALJ acted permissibly and well within his discretion.  See Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982) (finding that a treating physician's "conclusory statements . . . could reasonably have been rejected by the ALJ in the face of other

9

evidence"). Otero, therefore, points to no legal error caused by the ALJ's assignment of little weight to Dr. Nagy's opinion.

3. Otero's Subjective Complaints of Mental Illness

During the proceedings below, Otero made multiple subjective complaints of his alleged mental illness. First, in his May 2010 function report, he claimed that he "found it very difficult to secure and maintain work[;] get along with others and be in public." Tr. at 618. Next, in his testimony at hearings that the ALJ held on March 2, 2012 and July 2, 2012, he testified that he suffered from mental health complications involving anger and anxiety. Tr. at 349-53, 372-76. In reaching his determination that Otero did not suffer from any nonexertional limitation, however, the ALJ found that these subjective complaints of mental illness were not credible. Otero now argues that this finding was improper.

It is the ALJ's responsibility to determine whether a claimant's statements about his symptoms are credible. See 20 C.F.R. § 404.1529(c)(3). Social Security Ruling ("SSR") 96-7p prescribes a two-step process that an ALJ must follow to evaluate the veracity of a claimant's subjective complaints. SSR 96-7p, 1996 WL 374186, at *2. First, the ALJ must consider whether the claimant is suffering from "an underlying medically determinable physical or mental impairment[] . . . that could reasonably be expected to produce the individual's pain or other

10

symptoms." Id.  Second, the ALJ must determine whether the claimant's statements about his symptoms are substantiated by objective medical evidence.  Id.  If not, the ALJ must consider other relevant information to weigh the credibility of his statements.  Id.; see Guziewicz v. Astrue, 2011 DNH 010, 14. The ALJ's credibility assessment "is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).  This is because the ALJ, not the reviewing court, "observed the claimant, evaluated [the claimant's] demeanor, and considered how that testimony fit in with the rest of the evidence . . . ."  Id.

Here, the ALJ found Otero's subjective statements about the severity of his symptoms to be inconsistent with objective evidence in the record.  See Tr. at 329-33.  In reaching this finding, the ALJ considered the objective evidence in the record at length.  See Tr. at 330-35.  Moreover, substantial evidence in the record supports the ALJ's determination that Otero's alleged mental health symptoms were not as severe as Otero claimed.  The ALJ observed, for instance, that:

- The record indicated that Otero had strong ties to his family (Tr. at 327, 331);

- Otero functioned well enough to permit him to meet his girlfriend and get married during the period of his alleged disability (Tr. at 327, 331);

11

- The record indicated that Otero was successful in group therapy sessions (Tr. at 327);

- The record did not reflect any problems that Otero has in interacting with his health providers (Tr. at 327); and

- The record indicated that Otero's only area of difficulty was his relationship with his ex-wife, which Otero was increasingly able to tolerate (Tr. at 327, 331-32).

These facts in the record provide substantial evidence to validate the ALJ's finding that Otero's subjective complaints of severe mental illness were not credible. After reviewing this evidence, the ALJ concluded that "[t]he evidence of record reveals that the course of treatment and objective medical findings are not consistent with [Otero]'s alleged severity of symptoms and limitations." Tr. at 329. That conclusion falls squarely within the ALJ's discretion. See Frustaglia, 829 F.2d at 195.

Otero maintains, however, that certain objective evidence in the record, including his behavioral treatment records and the notes of Dr. Nagy, his treating psychologist, substantiate his subjective complaints, precluding the ALJ from discrediting them. But I have already concluded that the ALJ permissibly discounted this evidence, finding it contradicted by the rest of

12

the record.[3]  That Otero's subjective complaints may have been corroborated by objective evidence that the ALJ permissibly discounted does not, of course, make those complaints any more credible or otherwise obligate the ALJ to accept them.  See Frustaglia, 829 F.2d at 194 n.1 ("Where there are inconsistencies in the record, the ALJ may discount subjective complaints of pain.").  And in any event, I am not free to disturb the ALJ's credibility finding if it is supported by substantial evidence "even if the record arguably could justify a different conclusion." Rodriguez Pagan, 819 F.2d at 3.  Otero's argument essentially urges me to adopt a different interpretation of the record from that of the ALJ.  But because substantial evidence supports the ALJ's decision to place little credibility with Otero's subjective complaints, Otero's argument is a nonstarter.  See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  Thus, Otero points to no error in the ALJ's finding that Otero's subjective complaints were not credible.

---

[3] Otero also points to his GAF scores as objective evidence supporting his credibility.  He claims that the ALJ "only consider[ed] [his] GAF scores of 64 and 65" but failed to consider his low GAF scores of 40, 45, and 50.  Doc. No. 16 at 2.  In fact, however, the ALJ did consider all of Otero's GAF scores contained in the record but permissibly chose to give "each of these very limited weight."  See Tr. at 333.  Although the ALJ's decision enumerates only some of these scores, nothing in the decision suggests that the ALJ relied on them in reaching his conclusions.  See Tr. at 331.

For these reasons, I conclude that substantial evidence supports the ALJ's RFC finding, including his omission of any nonexertional limitation caused by mental illness.

B.  **The ALJ's Alternative Step Four and Step Five Findings**

Next, Otero challenges the ALJ's step four and step five findings, including the ALJ's decision to make alternative findings at each step of the sequential evaluation process.  At step four, the ALJ concluded that Otero was not disabled because his RFC did not preclude him from returning to his previous work as a "painter/supervisor."  Tr. at 335.  After making this finding, however, the ALJ proceeded to make an alternative finding at step five that Otero was not disabled because sufficient jobs existed in the national economy that someone with Otero's RFC could perform.  Tr. at 336.  Otero argues that both findings are unsupported by substantial evidence.  He also argues that the ALJ made reversible legal error by making an alternative step five finding after finding Otero not disabled at step four.

As an initial matter, I reject Otero's contention that the ALJ's step five finding of no disability lacks substantial evidence.  Otero argues that the step five finding is defective because the RFC that the ALJ posed to the vocational expert did not include Otero's asserted nonexertional limitations.  But as I have already explained, the ALJ's RFC finding was proper and

14

supported by substantial evidence, and the ALJ made no legal error by excluding any nonexertional limitation caused by mental illness from that finding.  As Otero recognizes, the vocational expert testified that a hypothetical person with that RFC could perform jobs existing in sufficient numbers in the national economy.  A vocational expert's testimony provides substantial evidence for a step five determination when the expert's opinion is based on a hypothetical that reflects an RFC finding supported by substantial evidence.  Perez v. Sec'y of Health & Human Servs., 958 F.2d 445, 447 (1st Cir. 1991) (holding that when "hypothetical [is] supported by substantial evidence . . . the ALJ [is] entitled to rely on the vocational expert's testimony").  The vocational expert's testimony during the proceedings below, therefore, provides substantial evidence that validates the ALJ's finding of no disability at step five.

Because substantial evidence supports the ALJ's step five determination that Otero is not disabled, Otero's objection to the ALJ's antecedent step four determination is material only if the ALJ committed reversible legal error by making alternative findings at step four and step five.  Otero presses this argument, pointing to the language of 20 C.F.R. § 416.920(a)(4), which provides that if the Social Security Administration "can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next

15

step."  20 C.F.R. § 416.920(a)(4).  Otero argues that this regulation precludes an ALJ from "go[ing] on to" step five after finding a claimant not disabled at step four, as the ALJ did here.

I disagree.  Although the First Circuit has not yet addressed the question of whether an ALJ may make alternative findings at step four and step five, other courts have held that it is permissible to do so.  In particular, in Murrell v. Shalala, 43 F.3d 1388 (10th Cir. 1994), the Tenth Circuit considered and rejected the very argument that Otero raises here.  The language of 20 C.F.R. § 416.920(a)(4), the court determined, simply means that "a proper finding of disability (at step three) or nondisability (at steps two, four, or five) is conclusive, and, thus, cannot be overturned by consideration of a subsequent step."  Murrell, 43 F.3d at 1389 (emphasis added).  But, the court held, the regulation does not prohibit an ALJ from making alternative findings at subsequent steps that reinforce, rather than overturn, a decision made at a previous step.  See id.  Far from exceeding an ALJ's discretion, the court explained, such alternative findings strengthen an ALJ's decision by making it more thorough.  Id.  In other words, "the integrity of a step-four finding is not compromised in any way by the recognition that step five, if it were reached, would dictate the same . . . result."  Id.

16

I find the reasoning in Murrell persuasive.[4]  Moreover, Otero cites no case holding that an ALJ may not make alternative step four and step five findings, and this Court is otherwise aware of no such authority.  To the contrary, numerous courts across the country have, like the Murrell court, concluded that an ALJ makes no error by reaching alternative findings at steps four and five.  See, e.g., Julian v. Colvin, No. 4:13-CV-2167-RLW, 2015 WL 1257790, at *10 (E.D. Mo. Mar. 18, 2015) ("[A]lternative findings are permissible, particularly to avoid wasting valuable agency and judicial resources."); Isabell v. Comm'r, Soc. Sec., No. JKB-13-0479, 2013 WL 5883409, at *2 (D. Md. Oct. 29, 2013) ("There is . . . no reason to preclude alternative findings, which can ensure that an ALJ's opinion reaches a valid result even if the ALJ commits an error at either Step Four or Five."); Lindsey v. Soc. Sec. Admin., No. 1:10-cv-00038-JAW, 2011 WL 86567, at *2 (D. Me. Jan. 10, 2011)

---

[4] In any event, even if the ALJ erred by making alternative step four and step five findings, that error would be harmless and would not justify remand.  "[R]emand is not essential if it will amount to no more than an empty exercise." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000).  As I have explained, the ALJ's step five finding is supported by substantial evidence as it presently stands.  Remanding this case would require the ALJ to do nothing more than to simply vacate his step four finding and leave his step five finding intact.  For that reason, even if the ALJ made legal error here – which he did not – that error would be harmless and would not warrant remand.

(alternative step five finding does not warrant remand). Accordingly, I conclude that the ALJ made no legal error here by finding Otero not disabled at both step four and step five.[5]

## IV. CONCLUSION

For these reasons, I grant the Commissioner's motion to affirm her decision (Doc. No. 13) and deny Otero's motion to reverse (Doc. No. 9). The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 27, 2015

cc: Raymond J. Kelly, Esq.
    T. David Plourde, Esq.

---

[5] Because the ALJ's step five determination is supported by substantial evidence and because the ALJ made no reversible error by making alternative findings at step four and step five, I need not address Otero's argument that the ALJ's step four finding lacked substantial evidence.

18